Appeal from Special Term, New York County.

Action by John P. Bohling against Sara G. Bronson. From an order denying defendant's motion requiring plaintiff's attorney to furnish plaintiff's present address, defendant appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

D. K. Jay, for appellant.

T. H. Friend, for respondent.

---

## MULLENY v. McDONALD et al.

(Supreme Court, Appellate Division, First Department. February 19, 1909.)

MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—NEGLIGENCE—EVIDENCE.
Where an employé sues for injuries caused by being hit by a brick falling from a floor above in a building where he was at work, he must show what caused it to fall, that bricks had fallen before, and that defendant had notice.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 955; Dec. Dig. § 278.*]

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action for personal injuries by William Mulleny against Ranald H. McDonald and another, copartners, doing business under the firm name of Ranald H. McDonald & Co. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Frank Verner Johnson (Louis Cohn, of counsel), for appellants.

Thomas J. O'Neill (Andrew Byrne, of counsel), for respondent.

CLARKE, J. The plaintiff was employed by defendants as a laborer in a building which was being remodeled. The defendants were the general contractors. There were two separate contractors working on the building. Frank M. Tench & Co. were doing the iron work, and Edward F. Roach the bricklaying and mason work. It was a loft building. The old side walls remained up. The bricklayers were cutting out what were called "chasers" in the walls, about 16 inches wide and about 12 inches deep, to set the steel columns in to carry the floor beams. The defendants cleaned away the dirt, handled the

lumber, and did all the carpenter work upon the building. The plaintiff, a direct employé of the defendants, had been working upon the building two weeks at the time of the accident. He was engaged with other men in unloading a load of lumber, and with another man had just carried in a beam from the street, on the first floor, level with the sidewalk. As he was going out for another beam, and about 10 yards from the front, he was struck upon the shoulder with what is described as a "clodded brick"—that is, a brick with mortar attached to it—which fell from the floor above, and suffered a dislocation of the shoulder and two fractured ribs. This action is under the common law. The learned court charged the jury, inter alia, as follows:

"It appears from the testimony here that there were other contractors upon the work on that building, and if you, gentlemen, are not satisfied that this accident happened as the result of the negligence of this defendant, then the verdict of the jury should be for the defendant. If this accident happened through the negligence of any other contractor, his agents or servants, who are engaged in working upon that building, then this defendant cannot be held liable for the negligence of those contractors, their agents or servants. If this accident happened through the negligence of a fellow servant or coworkman of this plaintiff—that is, through the negligence of some agent or servant who was employed by this defendant—then under the law the verdict of the jury should be for the defendant. This plaintiff, in engaging in work of this character, assumed the risks that were ordinarily incident to work of that kind, and if he suffered injury as the result of such a risk as was incident to the business, and only because of such a risk, then the verdict of the jury should be for the defendant. The claim here that the plaintiff seeks to sustain is based, as I said, upon the ground that this defendant failed to provide him with a reasonably safe place in which to discharge his work. * * * It is for you to determine whether or not this defendant omitted to exercise that degree of care and prudence in providing a safe place for his employés to work which ordinary prudence and caution requires him to exercise."

The defendants excepted to the submission to the jury whether or not defendants furnished a safe place for the plaintiff to work, and again asked the court to charge that, if the negligent act of any of the employés of the defendants caused the brick to fall, the verdict must be for the defendant, and the court so charged. There is no proof of who dropped the brick. The defendants gave evidence tending to show that the people on the floor above were all employés of the mason. The plaintiff undertook to show that everybody in the building was an employé of the defendants; but under the law of the case, as laid down by the court, the jury had no right to infer that the defendants were liable from the mere fact that the brick fell and struck the plaintiff. The court also charged that, whether the brick was dropped by an employé of an independent contractor or by a fellow workman, the defendants were not responsible. There was a failure to prove by whom it was dropped, what particular work was going on when it was dropped, or where it fell from, except that it fell from the floor above.

The sole ground for recovery, as sent to the jury, was the obligation to furnish a safe place. Plaintiff's witness Cox testified:

"That clodded brick fell from the floor above. There was double scaffolding at the time on the floor above. * * * This floor, from which this brick fell on the plaintiff, was covered so that it was safe for pedestrians to walk on; but there were openings in it, and on the floor of the building, or at least in

the front of the space that they had planked in, there was nothing on the front of it."

He was asked:

"Is there any method ordinarily employed in the business to prevent the falling of brick from such floors while work is being done?"

This was objected to, and the objection overruled, and he answered:

"Yes; the method I know, and that I have seen always used, was to sheath it properly over, so that there would not be space for anything to fall down; and on scaffold work they generally put something in front, when there is too much stuff, for to prevent the falling over of the over amount that is on the scaffolding—to put a board or plank on the ledgeway to prevent the falling over of the material, and when it would come to the plank ledgeway, of course, that would hold it. There was no such thing here. I do not know who was handling this brick at the time when one of them fell on the plaintiff. * * * There were two side walls that were not torn down. You might call it an overhaul job. The walls were not disturbed. They were cutting out brick and mortar. I mean the bricklayers and laborers. Both parts of the trade were working there. * * * I know Mr. Roach, who was on that job. I believe he had charge of the bricklayers. * * * Q. Then this building was not the kind of building that you say you had seen sheathing and so forth used in? A. Certainly it was the same with regard to sheathing. You have to protect it, no matter what building you work in. By sheathing I don't mean flooring, but for to have it safe, so that brick or any other material won't fall down. You would not have to make a floor brick tight. A brick is 4 inches any way you take it, or 3½ inches. In my 16 years of experience I have not seen all floors covered so that it would have been impossible for anybody to knock a brick from an upper floor to a lower one. I have seen them hurt in other buildings, just in the same way, where it was not protected. I have seen quite a number that were not protected. The majority of them was protected; precaution taken. It would have been possible to so cover up the floor above Mr. Mulleny that a brick could not have fallen through it, if they had only tried to cover it up that way. They could make space in that between, so that a brick would not fall; * * * so that there could not be a space of more than the width of the brick, making it 4 inches apart. I have seen builders in that sort of business in putting up buildings in this city do that. The custom is to safely protect it. The usual custom is to protect safely and give instructions about having it safe. By the Court: But he wants to know whether the usual custom is such that, if complied with, it would prevent the falling of a brick? A. That is what I mean to say. I do not believe that there is any of them so safely protected that a brick could not drop through. I could not say I ever did see one that you would not get room for a brick to drop through. I mean to say that it would have been possible, perhaps, to have prevented the falling of this brick. If there had been a space anywhere of 4 inches on this floor above, it would have been possible for a brick to go through that space, if somebody had started the brick in motion. * * * There was only one floor at the time ready, one floor above the entrance floor. It was on the entrance floor that this man was struck. Men were working only on that floor above; that is all. They were cutting out. The iron girders came in two separate lengths. You could not erect one story until you got the place for two cut out. They were working the iron up. They were working a story. They were cutting out. They had scaffolds built on top of this floor. They had two pair of scaffolds. They had to cut out this chaser in the wall, and, when they cut so high on one scaffold, they would arrange another scaffold on top of that, so that it would reach up to where they were working. About a story and a half was the highest point at that time that they were working on. There was only one floor, or the beams were one floor between the point where these men were working and the point where this man was struck. * * * I know the condition this floor above was in at the time this accident happened. It had been in the same condition before that, pretty near two weeks; and during that time the men were going in and out around it."

Lenox testified for the defendant:

"I am familiar with the condition of that floor at the time of this occurrence. * * * In the setting of the iron we had to have a lot of three-inch beams spread over the iron beams on that tier to receive another iron, and those beams were spread out; and along the walls, where Mr. Roach was cutting out the brickwork, there were two-inch planks running this way (indicating), to catch the brick as they came down. That floor was pretty well covered over. Of course, there was some iron laying on there, too. I suppose in the neighborhood of between 15 and 20 men were working above the floor where this man was struck, at the time he was struck. None of the defendant McDonald's men were working on that floor at the time. McDonald had nothing to do with the brickwork and the masonry, or with the iron work, or with the shoring."

To sustain this judgment it must be held that it is the duty of the general contractor, when a building is in process of reconstruction, so that the walls have to be dug out on the side to insert the iron for a story and a half at a time, to make each floor brick tight as the work goes up. As plaintiff was hit by a "clodded brick," consisting of a brick and a half attached to each other by mortar, the assumption is fair that it had been dug out of the wall in the process of cutting out what were called the "chasers" for the steel columns to be inserted in. But whether it had just then been cut out, or whether it lay upon the scaffolding and was knocked off, or upon the floor and kicked off, there was no proof at all. Plaintiff has recovered judgment without proof that bricks had fallen previously, without proof of notice to the defendants, upon the bare fact that the brick fell, and upon proof of the conditions surrounding the construction, as obvious to the plaintiff as to the defendants, for he testified:

"I had worked there for two weeks. * * * It is not the first day I saw that floor, or what was above it. * * * The floor above me was not pretty well covered in. There was some beams on it, not what you would say covered over. There was planks here and there. That condition existed all the time there while I was there. I saw that from the first time I went there, two weeks before this occurrence."

It would seem that to oblige contractors under all circumstances, to construct a brick-tight floor would make building operations impossible, and to allow a recovery in the case at bar would be to hold the defendants to the liability of an insurer. We do not think the plaintiff made out a case.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

PATTERSON, P. J., and McLAUGHLIN and HOUGHTON, JJ., concur. INGRAHAM, J., dissents.